**TRIBBLE & STEPHENS CO., et al., Appellants,**

**v.**

**CONSOLIDATED SERVICES, INC., Appellee.**

No. 04–86–00500–CV.

Court of Appeals of Texas, San Antonio.

Dec. 16, 1987.

Rehearing Denied Feb. 22, 1988.

John T. Schneider, Craig E. Power, John S. Torigian, Houston, for appellants.

Charles W. King, C.J. House, San Antonio, for appellee.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

DIAL, Justice.

This is a suit under a construction contract.

Appellee, Consolidated Services, Inc., is an electrical subcontractor and was awarded the contract to perform electrical work on the building of a Target store in San Antonio. Appellants, Tribble & Stephens Company and the Dayton–Hudson Corp., general contractor, oversaw and organized the work to be done on the project by the various subcontractors. Bob Law, the foreman for Tribble & Stephens Company, fired Consolidated Services, Inc. from the job and hired Collier Electric to complete the electrical work. Consolidated Services, Inc. brought suit against the general contractor and Dayton–Hudson Corp., the owner of the Target store, alleging wrongful termination of the contract and conversion of materials and tools.

Appellants appeal the judgment of the trial court which awarded appellee $70,-054.00 actual damages for breach of contract, $1,470.00 damages for conversion, $25,000.00 exemplary damages, foreclosure of its mechanic's and materialman's lien, attorneys fees, and pre- and post-judgment interest. Appellants contend there is no evidence or insufficient evidence to support the jury's findings of a conversion, $1,470.00 damages for conversion, malice (and the award of exemplary damages), breach of contract, and $70,054.00 damages under the contract; that there is no evidence or insufficient evidence and no special issues or findings to support the trial court's judgment of foreclosure of the mechanic's and materialman's lien; and that the jury findings of a conversion and the amount of $1,470.00 as damages irreconcilably conflict.

Appellee urges us not to consider several of appellants' points of error because they are multifarious. We do not find them to be so.

■ In order to present a "no evidence" point on appeal, the complaining party must have brought the complaint to the attention of the trial court. He can do this by one of five ways:

(1) file a motion for instructed verdict;

(2) object to the submission of a vital fact issue;

(3) file a motion for judgment non obstante veredicto;

(4) file a motion to disregard the jury's answer to a vital fact issue; or

(5) file a motion for new trial specifically raising the complaint. *Aero Energy, Inc. v. Circle C. Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985).

■ A complaint in a motion for new trial that the jury's answers to specific special issues are "contrary to the great weight and overwhelming preponderance of the evidence, and in any event, as a matter of law, plaintiff is entitled to a new trial" is sufficient to support a factual insufficiency claim. *Cavitt v. Jetton's Greenway Plaza Cafeteria*, 563 S.W.2d 319, 321 (Tex.Civ.App.–Houston [1st Dist.] 1978, no writ).

■ When appellant points out that the evidence can show only one state of facts, the complaint is a no evidence point, as is a complaint that the findings are not supported by any legal, competent evidence. *Soto v. Doehne*, 625 S.W.2d 60, 62 (Tex.App.–San Antonio 1981, no writ). Legal sufficiency of the evidence is raised by complaints that the evidence "clearly showed" a state of facts or "compels" a certain finding or conclusion, *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558, 568 (Tex.1984); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982), that the "undisputed" evidence establishes the existence of a fact, *Royal*

*Indemnity Co. v. Hume,* 477 S.W.2d 683, 687 (Tex.Civ.App.–San Antonio 1972, no writ), or that certain findings are without any support in the evidence and are against the uncontradicted testimony, *Spurlock v. Burnette,* 365 S.W.2d 812, 814 (Tex.Civ. App.–Austin 1963, no writ).

In studying the substance of each complaint raised in the motion for new trial, we find appellants did make the trial court aware of their complaint that the evidence was both factually and legally insufficient to support the jury findings.[1]

■ On review of a legal insufficiency point of error we consider only that evidence and the reasonable inferences that can be drawn therefrom, in their most favorable light, to support the jury's findings while disregarding all others. *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W. 2d 206, 207 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981).

■ In determining the factual sufficiency of the evidence we must consider and weigh all the evidence, set aside the judgment, and order a new trial if the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## BREACH OF CONTRACT

■ The testimony presented by the parties was conflicting as to whether Consol-idated Services, Inc. attended progress meetings held by Tribble & Stephens Company with the subcontractors or was aware of any scheduled completion date or project schedule, whether extras completed by Consolidated Services, Inc. were authorized orally (though the contract required written changes only), whether Consolidated Services, Inc. was prevented from timely completing its work due to poor job coordination on behalf of Tribble & Stephens Company, whether Consolidated Services, Inc. had a sufficient number of workers on the job, and how much work Consolidated Services, Inc. actually completed before it was removed from the job. Evidence was produced supporting each side of these issues.

Evidence was presented which, if believed, tended to show that Consolidated Services, Inc. was prevented from timely completing its work due to a lack of materials to be provided by Target and a lack of adequate job coordination by Tribble & Stephens Company. Specific examples of these are seen in the testimony by the Wades (appellees) that pig tails (electrical connections) were too short and Consolidated Services, Inc. had to move junction boxes to accommodate the shorter tails, that the kitchen equipment to be supplied by Target did not arrive timely so that Consolidated Services, Inc. could wire the area, that the original plans given Consolidated Services, Inc. deviated from subsequent plans specifying the location of the cash

---

1. In complaining of the jury finding that Tribble & Stephens Company breached the contract, appellants urged "that the answer to Special Issue No. 1 was against the greater weight and degree of credible testimony offered at the trial of this case. The overwhelming amount of evidence clearly showed that the Plaintiffs could not and did not properly man the job...."

Appellants complained the finding on damages for breach of contract ($70,054.00) "was against the greater weight and degree of credible testimony.... The jury totally disregarded all the credible testimony...."

In their motion for new trial, appellants contended that the jury finding of a conversion is "against the greater weight and degree of credible evidence" and that "it is totally contrary to the greater weight and degree of credible testi-mony.... Additionally, there was insufficient evidence of the value of those tools at the date of the alleged conversion."

As far as their complaint concerning the jury finding that Tribble & Stephens Company acted with malice, appellants urged that the answer "is against the greater weight and degree of credible evidence and testimony.... There was absolutely no evidence concerning malice...."

Appellants argued the finding of $25,000.00 as punitive damages "is against the greater weight and degree of credible evidence and testimony. The evidence clearly showed that the Defendants acted without malice.... The award of any punitive damages is clearly wrong and against all the evidence and testimony.... There is nothing in the record to this case to support any award of punitive damages...."

register counters which resulted in the floor boxes being located in the wrong area, and the testimony of George Tenney, area superintendent for Collier Electric, that beams for the soffit were not completed even by the time Collier Electric, the replacement electrical subcontractor, took over, thus preventing Consolidated Services, Inc. from installing the soffit light fixtures. Tribble & Stephens Company's attitude toward changes, such as demanding that Consolidated Services, Inc. redo the check out counters without a written change order as well as their threat to Consolidated Services, Inc. to terminate the contract should they not complete this and other changes, provides a sufficient basis for the jury to make its finding that Tribble & Stephens Company breached the contract. There is evidence, and it is more than a scintilla, to support this finding.

Ken Norton, Tribble & Stephens Company's project manager, testified that Consolidated Services, Inc. was terminated due to non-performance "in the aspect of not supporting, and not helping us, keep up with the project schedule. The continued reluctance to provide more man power on the job to meet those needs." There is sufficient evidence that Consolidated Services, Inc. was prevented from timely performing its electrical work due to circumstances controlled by Target and Tribble & Stephens Company which would not justify Tribble & Stephens Company's termination of the contract. There is also evidence the jury could believe that Consolidated Services, Inc. did supply sufficient manpower for the job. Thus, the jury's finding that Tribble & Stephens Company wrongfully terminated the contract is supported by the evidence and is not so against the overwhelming weight and credibility of the evidence as to be manifestly unjust.

The jury is the finder of fact and had the opportunity to observe the witnesses and determine their credibility. As such, they resolved the conflict in favor of Consolidated Services, Inc. Thus, we must overrule appellants' factual insufficiency complaints. In the absence of a total lack of evidence on the issue, we cannot sustain appellants' no evidence points. Appellants' points of error 13 and 14 are overruled.

Appellants raise evidentiary sufficiency points concerning the award of $70,054.00 as contract damages and urge that the award is clearly excessive. In their substantive argument under these points they claim the proper measure of damages was not submitted to the jury and that Consolidated Services, Inc. failed to present evidence on the proper measure.

Appellants failed to raise the issue of an improper measure of damages in the trial court and thus waived review of their complaint. *Nelson Cash Register, Inc. v. Data Terminal Systems, Inc.*, 671 S.W.2d 594, 599 (Tex.App.–San Antonio 1984, no writ); *Pool v. Dickson*, 512 S.W.2d 68, 70 (Tex. Civ.App.–Tyler 1974, no writ); *Success Motivation Institute, Inc. v. Lawlis*, 503 S.W. 2d 864, 867 (Tex.Civ.App.–Houston [1st Dist.] 1973, writ ref'd n.r.e.).

The trial court submitted the following special issue on contract damages:

SPECIAL ISSUE NO. 2:

What damages, if any, do you find from a preponderance of the evidence resulted from the said breach of contract, if any you have so found?

ANSWER: In Dollars and Cents, if any.

ANSWER: $70,054.00

Justo Garcia, a dry wall subcontractor for Tribble & Stephens Company, testified that, on this job, written change orders were not prepared until after the work was completed. The order was given orally. He stated, "You can't always wait" for the written order because you get behind.

Gary Wade, a co-owner of Consolidated Services, Inc., stated that Tribble & Stephens Company demanded many changes to the original plans, such as the move in the cash register counters and kitchen appliances, which were incorporated into subsequent plans and specifications. How-

ever, Consolidated Services, Inc. never received these changes. He stated that Bob Law told him to make the changes and do the extra work. He was told to keep track of the time, turn it in, and get paid for it.

Harry Wade, Jr., a co-owner and president of Consolidated Services, Inc., testified that Tribble & Stephens Company and Larry Hillman ordered Consolidated Services, Inc. to move junction boxes because the short pig tails Target supplied would not be replaced with longer ones. He stated that Ken Norton, Bob Law, and Larry Hillman told Consolidated Services, Inc. to move the cash register wiring to meet the new plans or be fired. Ken Norton and Larry Hillman told Consolidated Services, Inc. to do the extras, keep track of the time, and they would take care of it later on. He said Tribble & Stephens Company threatened to terminate Consolidated Services, Inc.'s contract if Consolidated Services, Inc. did not do what they were told to do. He said Tribble & Stephens Company wanted the changes and extras done immediately.

Harry Wade, Jr. testified that Consolidated Services, Inc.'s work was substantially completed except for the check out counters and kitchen equipment hook ups at the time Tribble & Stephens Company terminated the contract.

Harry stated that the contract provides that there will be no changes except on Tribble & Stephens Company's written order.

Ken Norton remembers no conversations concerning extras other than the two which had been reduced to writing. The normal procedure is to give the owner the price and change information for his approval and then issue a contract. Norton has no authority to agree to changes, but Bob Law does.

Larry Hillman said only two change orders were made and these were in writing. He denied promising to pay for changes. He did say that if the electrician's fixture plans did not match the fixture installer's plans, they change the electrician's plans to match the installer's plans.

Bob Law stated the electrical work was not substantially complete by December 10.

Appellants complain that Consolidated Services, Inc. submitted no special issue concerning whether Consolidated Services, Inc. had substantially completed the contract. However, appellants made no objection to the omission and have thus waived their complaint. TEX.R.CIV.P. 279.

There is sufficient evidence for the jury to have impliedly found that Tribble & Stephens Company waived the provision requiring all change orders to be written. Thus, the amount of the extras is an additional item the jury could consider in its damage award.

■ Further, when Tribble & Stephens Company breached the contract they relinquished the contractual procedural rights concerning change orders and claims for additional costs. *Shintech Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 151 (Tex.App.—Houston [14th Dist.] 1985, no writ); *City of Baytown v. Bayshore Constructors, Inc.*, 615 S.W.2d 792, 794 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *North Harris County Junior College District v. Fleetwood Construction Co.*, 604 S.W.2d 247, 254 (Tex.Civ.App. —Houston [14th Dist.] 1980, writ ref'd n.r. e.). Thus, Consolidated Services, Inc. is entitled to the award of payment for the extra work done, pursuant to their pleadings.

The original contract price was $187,-400.00. The two written change orders netted a decrease of $3,900.00, making the contract price $183,500.00. Gary Wade stated in would cost $5,000.00 to $7,000.00 to complete the work (though Ken Norton testified they paid $60,000.00 to Collier Electric to complete the work). The new contract price of $183,500.00 must be reduced by the cost of completion, and using the highest completion figure, the contract amount would be reduced to $176,500.00. Tribble & Stephens Company paid $115,-000.00 to Consolidated Services, Inc. leaving $61,500.00 due under the contract for

completed work. To this the jury could add the charge for extras of $11,430.50. Thus, the jury could find as contract damages $72,930.50. Under the state of this evidence it is not clear that the jury included $6,339.00, the value of the materials taken from Consolidated Services, Inc.'s trailer, in their award of contract damages.

We hold there was evidence and it was sufficient to support the jury's finding of $70,054.00 as damages and that the amount is not excessive. Appellants' fifteenth through eighteenth points of error are overruled.

### FORECLOSURE

Appellants argue there is legally and factually insufficient evidence to support the award of foreclosure on the mechanic's and materialman's lien. Appellants have waived review of this point of error because neither the legal sufficiency complaint nor the factual sufficiency complaint was raised in the trial court. *See, Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d at 822; TEX.R.CIV.P. 324(b).

▮ Appellants next object to the trial court's judgment ordering foreclosure of a mechanic's and materialman's lien against the Target property because no special issues were submitted on that question and appellee did not request any issues or object to their omission. Appellants similarly made no objection to their omission. Appellants rely on TEX.R.CIV.P. 279, which provides:

> Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived....

If an issue is conclusively established, the trial court need not submit a special issue on that question to the jury. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971); *Martin v. United States Trust Co. of New York*, 690 S.W.2d 300, 310 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

The issue on appellee's recovery of a foreclosure of a mechanic's and material-man's lien is an independent ground of recovery and is not referable to the issues submitted to the jury. A trial court is not authorized to make findings of fact pursuant to rule 279 when the omitted issue is an independent ground of recovery and no issues referable to it were submitted to the jury. *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446, 448 (Tex.1984); *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d 529, 531 (Tex.1965). Moreover, appellee failed to establish its entitlement to foreclosure as a matter of law. Appellee failed to present any evidence that it complied with the statutory prerequisites by sending, by certified or registered mail, any copies of the mechanic's or materialman's lien affidavit to the owners of the property. TEX. PROP.CODE ANN. § 53.055 (Vernon 1984). Though substantial compliance was found in a case in which only one copy of the affidavit was sent to the owners (*James Mechanical Contractors, Inc. v. Tate*, 647 S.W.2d 347, 349 (Tex.App.—Corpus Christi 1982, no writ)), we find there is no compliance when no copies are sent. Further, appellants have no duty to object to the omission of special issues when the entire theory of recovery is omitted from the charge. *Indust–Ri–Chem Laboratory, Inc. v. Par–Pak Co.*, 602 S.W.2d 282, 289 (Tex.Civ.App.—Dallas 1980, no writ). Appellee waived recovery on its pleaded cause of action for foreclosure.

We hold the trial court erred in awarding foreclosure of appellee's mechanic's and materialman's lien. Appellants' eleventh and twelfth points of error are sustained. This portion of the trial court's judgment is reversed.

### CONVERSION

Appellants complain the evidence is factually insufficient to support the jury's finding that Tribble & Stephens Company converted Consolidated Services, Inc.'s personal property and that damages for the conversion were $1,470.00.

▮ A conversion occurs when one person exercises dominion and control over

the property of another in denial of or inconsistent with his rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971); *Killian v. Trans Union Leasing Corp.*, 657 S.W.2d 189, 192 (Tex.App.— San Antonio 1983, writ ref'd n.r.e.). Appellants contend that article 12 of the contract gives Tribble & Stephens Company the right to take possession of the materials and supplies stored on the jobsite by the subcontractor at the termination of the contract. We have previously held that there is sufficient evidence to support the jury's finding that Tribble & Stephens Company breached the contract. Thus, appellants may not rely on paragraph 12 to authorize them to take the property.

Ken Norton, the project manager for Tribble & Stephens Company at the time, admitted Tribble & Stephens Company took the supplies and materials from the trailer. Bob Law, the project superintendent, made an inventory of the items in the trailer. He stated he took the materials and used them in the completion of the project. He said he helped load a couple of Consolidated Services, Inc. trucks with the tools from the trailer, though he did not know who was driving the trucks. Law further stated that the materials incorporated into the project had already been paid for.

Gary Wade said that when he returned to the project site on December 27 the lock on the trailer had been cut off and everything removed. He stated that not all of the materials stored in the trailer were to be used in the project. They had finished using the conduit and had stored the excess under the trailer.

Gary stated that after Tribble & Stephens Company terminated their contract, Bob Law refused to let Consolidated Services, Inc. remove anything off the project. He valued the items listed on the inventory Tribble & Stephens Company supplied at $6,399.00. The inventory did not include the tools. The value of these materials was not included in their last draw request. He listed and valued Consolidated Services, Inc.'s tools stored in the trailer:

8 ladders at $100.00 each;

3 hammerdrills at $100.00 each;

10 benders in various sizes at $20.00 to $40.00 each (total of $250.00 to $300.00); and

4 electrical cords at $30.00 to $40.00 each.

The total value of the tools he testified is $1,470.00. Gary stated he never saw the tools again.

While the testimony concerning the tools may be contradictory in that Bob Law testified he loaded them on a Consolidated Services, Inc. truck, the jury made its finding, and that finding is well supported by the evidence. It is up to the jury to weigh the evidence, and they can believe all, part, or none of the testimony presented. Here, they obviously accepted Gary Wade's testimony as the more credible. Since there is some evidence and that evidence is not so against the great weight and preponderance of the evidence as to be manifestly unjust, we must uphold the jury's finding of a conversion and $1,470.00 damages. Appellants' no evidence and insufficient evidence points of error numbered one through four are overruled.

Appellants complain the jury findings in special issues number 3 and 4 irreconcilably conflict with the evidence and other jury findings and thus demonstrate the jury's inability to comprehend the conversion issues. The substance of their argument is that the jury, on finding a conversion occurred, could only find as damages $5,470.00 (or more), and a finding of anything less would indicate the jury found a conversion of only part of Consolidated Services, Inc.'s personal property.

The test for determining whether a conflict between special issues is irreconcilable, and thus fatal to the judgment, is whether, when disregarding one of the contested issues, the judgment would remain the same as when disregarding the other contested issue. *Texas & Pacific Railway Co. v. Snider*, 159 Tex. 380, 321 S.W.2d

280, 282 (1959); *Woodyard v. Hunt,* 695 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1985, no writ). We first note that special issues number 3 and 4 do not ask the same question and therefore, cannot be in conflict. Further, disregard of special issue number 4 (the amount of damages) does not demand a judgment in favor of appellants, nor would a disregard of special issue number 3 and a reliance on special issue number 4 require a judgment in favor of appellants.

Testimony at trial indicates both tools and materials were taken from Consolidated Services, Inc.'s trailer. The jury issue did not delineate between the two, but merely asked if a conversion of "personal property" occurred.[2] The tools were valued at $1,470.00 and the materials from $4,000.00 to $6,399.00. While it is clear the jury award is based solely on the value of the tools, we do not find this to be in conflict with either the evidence or the other issues.

Special issue number 4 inquired as to what dollar amount "would reasonably compensate" Consolidated Services, Inc. "for their damages" due to the conversion. There is testimony the materials were incorporated into the completion of the project. It is reasonable to presume the jury took the value of the materials used into consideration in determining contract damages.

Since neither special issue number 3 nor number 4 specified both tools and materi-

als, we hold that the jury's findings that personal property was converted and that $1,470.00 would compensate Consolidated Services, Inc. do not conflict. We overrule appellants' fifth and sixth points of error.

## MALICE

Appellants raised factual and legal sufficiency questions in their motion for new trial concerning malice (special issue number 5) in the taking of the materials and tools and concerning the award of exemplary damages (special issue number 6).

▇ Malice is defined as ill will, bad or evil motive, or such gross indifference as will amount to a willful or wanton act. *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 475 (Tex.App.—Houston [1st Dist.] 1985, no writ).

▇ Appellee cites to various actions on the part of Tribble & Stephens Company relating to the contract which they contend establish Tribble & Stephens Company's malice in converting the tools and materials: that Tribble & Stephens Company sent a telegram in the afternoon of December 23, 1982, giving Consolidated Services, Inc. forty-eight hours to correct alleged deficiencies and that this was done at a time Tribble & Stephens Company knew they had already hired another subcontractor; that Tribble & Stephens Company allegedly had torn apart work completed by Consolidated Services, Inc.; that Bob Law did not coordinate the project well and worked

---

**2.** The special issues concerning the conversion asked:

SPECIAL ISSUE NO. 3:

Do you find from a preponderance of the evidence that there was a conversion, as that term is hereinafter defined, of the personal property of the Plaintiffs, CONSOLIDATED SERVICES, INC., located in the trailer by the Defendants, TRIBBLE & STEPHENS, on the date in question?

In connection with the above issue, you are instructed that a conversion is an offense against the possession of property. It is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another which is to the exclusion or inconsistent with the owner's rights.

ANSWER: "We do" or "We do not".

ANSWER: "We do".

If you have answered Special Issue No. 4 "We do", then answer Special Issue No. 4. If you have answered Special Issue No. 3 "We do not", do not answer Special Issues No. 4, 5, and 6 but answer Special Issue No. 7.

SPECIAL ISSUE NO. 4:

What amount of money, if any, do you find from a perponderance [sic] of the evidence would reasonably compensate the Plaintiffs, CONSOLIDATED SERVICES, INC., for their damages as a result of the conversion, if you have so found?

ANSWER: In Dollars and Cents, if any.

ANSWER: $1,470

against the subcontractors; etc. However, this testimony goes toward establishing malice in the breach of contract and Consolidated Services, Inc.'s termination. It is no evidence of any malice exhibited by Bob Law or Tribble & Stephens Company in converting the tools and materials from Consolidated Services, Inc.'s trailer.

Appellee attempts to raise appellants' action in breaching the contract to evidence that Tribble & Stephens Company maliciously converted its property. Appellee failed to establish a link in the actions of breaching the contract to the evil motive in converting the goods. It is too wide a gap to leap from wrongful termination to malicious conversion. There is nothing to show that Tribble & Stephens Company maliciously breached its contract in order to use the termination of the contract clause as authority for taking appellee's property.

We hold there is no evidence to support the jury's finding that Tribble & Stephens Company acted with malice in converting Consolidated Services, Inc.'s property. Thus, the award of exemplary damages must also fail as there is no evidence of malice to support the award. Appellants' points of error 7 through 10 are sustained. The portion of the trial court's judgment awarding appellee punitive damages is reversed.

### ATTORNEY'S FEES

Appellants' final contentions concern the trial court's award of $15,200.00 as attorney's fees.[3] The basis of their claim is that since appellee was not entitled to recover under its contract cause of action, it was not entitled to recover attorney's fees pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986). Appellants specifically do not contest the dollar amount of the award.

We have affirmed the trial court's judgment for an award under appellee's contract cause of action. Therefore, appellee is entitled to recover its attorney's fees. Appellants' points 19 and 20 are overruled.

3. The trial court also made a contingent award

The judgment of the trial court is affirmed except that the portions awarding appellee exemplary damages based on malice and foreclosure of its mechanic's and materialman's lien are reversed.

of attorney's fees on appeal.