Affirmed and Opinion filed April 14, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01027-CV

___________________

 

Eagle Fabricators, Inc.,
Appellant

 

V.

 

Raymond Rakowitz d/b/a Redline Welding &
Steel Services, Appellee



 



 

On
Appeal from the County Civil Court at Law No. 3

Harris County,
Texas



Trial Court Cause No. 902,394

 



 

 

OPINION

            In
this contract case, a jury found that appellant Eagle Fabricators, Inc. owed
Raymond Rakowitz more than $78,000.00 for his construction services.  Eagle asks
us to reverse the judgment on procedural and evidentiary grounds.  Because
Eagle has not shown that the trial court erred in charging the jury or in
setting aside an order consolidating this case with another, and because the
evidence is legally and factually sufficient to support the judgment, we
affirm.

I.  Factual and Procedural
Background

            The City of
Houston hired State Construction, L.P. to act as the general contractor in
building a fire station, a high school, and a middle school.  To ensure that
subcontractors were paid, State Construction posted a bond issued by Liberty
Mutual Insurance Company.  State Construction hired subcontractor Eagle
Fabricators, Inc. to fabricate and erect the steel used in the three projects,
and Eagle hired Raymond Rakowitz d/b/a Redline Welding & Steel Services as
a second-tier subcontractor to erect the steel.  Rakowitz agreed to use the
steel fabrications provided by Eagle and to perform the work in accordance with
Eagle’s drawings.  The drawings contained Eagle’s “Notice to Customer &
Erector” that “back charges for down time, corrective work or replaced
materials will not be accepted unless authorized by Eagle Fab before such costs
are incurred.”[1] 


            Over the
course of construction, it was discovered that many of the steel parts Rakowitz
was to erect were improperly fabricated, and he could not continue the work
without performing additional work at an increased cost.  Although Eagle
disputes it, Rakowitz testified that he obtained advance oral authorization from
Eagle for all additional work and sent Eagle work orders on a weekly basis. 
According to Rakowitz, Eagle first instructed him to send invoices for the additional
work to another company that performed fabrication services as a subcontractor
to Eagle.  Rakowitz did not have a contract with the other subcontractor, and
no payments were made in response to the invoices.  Rakowitz testified that he also
sent invoices to State Construction to show the general contractor that Eagle
had not paid for all of the work he performed for Eagle.  

            Rakowitz last
worked on the construction projects on or about June 7, 2007.  On June 11,
2007, Rakowitz sent Eagle invoices for the outstanding charges and stated that
he could not continue working unless the additional charges were paid, but Eagle
made no further payments.  A month later, Eagle sent State Construction a sworn
proof of claim that Eagle owed $28,000.00 to Rakowitz’s company for work on the
fire station alone.  Of that sum, Eagle identified $23,485.00 as the amount due
for “extras or adjustments” to the original agreed contract price.  Less than a
week after submitting the sworn proof of claim, Eagle wrote to State
Construction asking that State Construction bar Rakowitz’s company from the
high school jobsite, and a few days later, Eagle notified Rakowitz by certified
mail that he was fired from the high school and middle school projects.  

            The parties
were unable to come to any agreement over the outstanding charges, and Rakowitz
sued Eagle in Harris County Civil Court at Law No. 3.  In addition, Rakowitz
sued Liberty Mutual on the construction bond in Harris County Civil Court at
Law No. 2, seeking payment of amounts owed for his work for Eagle.  

            Just over a
month before this case was scheduled to be tried, Eagle moved to consolidate it
with Rakowitz’s case against Liberty Mutual.  Over Liberty Mutual’s objection,
the trial court initially granted the request.  A week later, and just eighteen
days before the trial setting, Eagle filed a cross-claim against Liberty Mutual
for payments that State Construction allegedly owed Eagle.  Rakowitz moved for rehearing
of the consolidation order, and Liberty Mutual moved to strike Eagle’s
cross-claim.  The trial court granted both motions on the same day, in effect restoring
the status quo ante.  

            Although the
evidence at trial was conflicting, Rakowitz presented testimony and documentary
evidence that he had not been paid in full for his work on any of the three
projects.  The evidence shows that Eagle agreed in the purchase order to pay
Rakowitz $88,000.00 for work on the fire station.  Rakowitz testified that he
completed 95% of that work, which entitled him to a progress payment of
$83,600.00.  Of that amount, Eagle paid $60,000.00, leaving an outstanding
balance of $23,600.00, exclusive of the change orders.  Regarding the high
school, Rakowitz offered evidence that he was to be paid $43,000.00 for the
work he performed pursuant to the purchase order, and because he had completed
75% of that work, he was entitled to a progress payment of $32,250.00.  Eagle
had paid $22,000.00 of this amount, leaving a balance of $10,250.00. 
Concerning the construction of the middle school, Eagle agreed to pay Rakowitz
$20,000.00 for the work addressed in the purchase order, and Rakowitz testified
that he completed 70% of the work and was entitled to a progress payment of
$14,000.00.  Eagle had paid him only $10,000.00, leaving an outstanding balance
of $4,000.00.  Thus, according to the evidence Rakowitz presented, Eagle owed
him $37,850.00 for the portion of the work Rakowitz performed that was
described in the purchase orders.

            In addition,
Rakowitz presented evidence that he performed additional work on the fire
station as reflected in two sets of change orders.  His charges on these orders
were $16,720.00 and $16,210.00, neither of which had been paid.  Rakowitz also
presented evidence that he performed additional work on the high school reflected
in a change order for which he was due $5,320.00.  The total due on the change
orders was $38,250.00.

            The sum of
the disputed amounts Rakowitz sought to recover for his work on these three
projects was $76,100.00.  In addition, he sought recovery of $2,250.80 Eagle
owed for work he performed on a fourth project, referred to as the Fifth Ward
Multiservice Center.  In this appeal, Eagle does not dispute its liability on
this claim.  Overall, then, the sum of the damages Rakowitz sought was
$78,350.80. 

            The jury
found that (a) Rakowitz performed compensable work for Eagle; (b) Eagle
and Rakowitz each failed to comply with their agreements, but Rakowitz’s
failure was excused and Eagle’s failure was not; and (c) Eagle was the
first to breach the contract.  Rakowitz was awarded $78,350.80 in damages,
representing the full amount he sought at trial, together with attorneys’ fees. 
Eagle’s motion for new trial was overruled by operation of law, and this appeal
ensued.  

II. 
Issues Presented

            In
its first appellate issue, Eagle argues that it is entitled to a take-nothing
judgment because (a) the evidence is legally and factually insufficient to
support the finding that Eagle breached its contract with Rakowitz; (b) the
evidence conclusively establishes that Eagle was excused from any breach; and
(c) Rakowitz performed additional work for State Construction, not for Eagle,
and therefore is not entitled to recover from Eagle in quantum meruit for that
work.  In its second issue, Eagle contends the trial court erred in setting
aside the order consolidating Rakowitz’s claims against Eagle with his claim
against Liberty Mutual.  Eagle argues in its third issue that the damage award must
be reversed because it is based on charge error and because the evidence
supporting the award is legally and factually insufficient.

III.  Analysis

A.        Evidence of
Liability

            When
reviewing the legal and factual sufficiency of evidence, we apply
well-established standards of review.  To determine whether the evidence is
legally sufficient to support the judgment, we review the entire record,
crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not.  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We assume that jurors decided
questions of credibility or conflicting evidence in favor of the verdict if
they reasonably could do so.  Id. at 819, 820.  We do not substitute our
judgment for that of the trier-of-fact if the evidence falls within this zone
of reasonable disagreement.  Id. at 822.  If the evidence would enable
reasonable and fair-minded people to differ in their conclusions, then it is
legally sufficient to support the verdict.  Id.  When reviewing a jury
finding for factual sufficiency, we consider and weigh all of the evidence in a
neutral light and conclude that the finding is not supported by sufficient
evidence only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986) (per curiam).  Whether reviewing the legal or factual
sufficiency of the evidence, appellate courts do not reweigh the credibility of
witnesses.  City of Keller, 116 S.W.3d at 820 (legal sufficiency); Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003) (factual
sufficiency).  

            In its
briefing, Eagle has presented some arguments applicable to all of Rakowitz’s
contractual claims, some that are associated only with his claims under the original
agreements with Eagle—i.e., the purchase orders—and some that concern only
those claims associated with the later arrangements for additional work—i.e.,
the change orders.  To the extent that Eagle presents different arguments
regarding each type of claim, we maintain that distinction in our discussion. 

            1.         Purchase
Orders

            With regard
to the work that was the subject of the purchase orders, Eagle contends there
is no evidence that it failed to pay for the percentage of work Rakowitz
actually completed.  According to Eagle, Rakowitz’s claim that he finished 95%
of the work on the fire station is “implausible” and his claim that he
completed 75% of the work on the high school is “not credible.”  Nevertheless,
this was Rakowitz’s testimony, and we will not reweigh his credibility. [2]  In support of its
contention that no reasonable jury could have accepted this testimony, Eagle
points only to evidence that State Construction eventually paid another
subcontractor more money to complete the erection services on these two
projects than Eagle would have been required to pay Rakowitz to finish the work
under the terms of the purchase orders if there had been no changes or delays. 
It is undisputed, however, that there were changes and delays, and Eagle offers
no explanation for its assumption that the costs of performance in these two
very different scenarios should be the same.  We therefore do not find this
argument persuasive.

            2.         Change
Orders

                        a.         Absence
of Prior Written Authorization

            Eagle next
contends that the evidence is legally and factually insufficient to support
liability because Rakowitz was required to obtain Eagle’s prior written
authorization for the additional work described in the change orders, but
failed to do so.  In making this argument, Eagle simply ignores much of the
contrary evidence admitted at trial.  Specifically, Rakowitz testified that he
obtained Eagle’s authorization before performing any additional work.  Although
the authorization he received was oral, he was not required to obtain it in
writing.  That requirement is found in the contracts between State Construction
and Eagle, but not in the contracts between Eagle and Rakowitz.  

            Eagle asserts
that Rakowitz was bound by the writing requirement found in Eagle’s contracts
with State Construction because Rakowitz benefited from those contracts’ provisions. 
In support of this argument, Eagle cites cases addressing the doctrine of direct
benefits estoppel.   See In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 741 (Tex. 2005) (explaining that under direct benefits estoppel, a
second-tier subcontractor suing a general contractor is bound by an arbitration
provision in the contract between the general contractor and the first-tier
subcontractor only when he “seeks, through the claim, to derive a direct
benefit from the contract” containing the provision); In re Weekly Homes,
L.P., 180 S.W.3d 127, 132–33 (Tex. 2005) (under direct benefits estoppel, a
nonsignatory to a contract containing an arbitration provision may be bound by
the provision if the nonsignatory sought or obtained direct benefits from the
contract during its performance).  But Eagle does not cite, and we have not
found, any Texas case applying this doctrine to any question other than the
determination of whether someone is bound by an arbitration clause found in a
contract to which he is not a signatory, but from which he seeks or has sought a
direct benefit.  No such circumstances are present here.  The provision at
issue does not concern arbitration; Rakowitz has not asserted a claim under
Eagle’s contracts with State Construction; and Eagle has identified no way in
which Rakowitz directly benefitted from those contracts.  This argument
therefore presents no basis for reversal.

                        b.         Rakowitz’s
Invoices to State Construction

            Eagle also
points out that Rakowitz sent invoices to State Construction and was paid
directly by State Construction for some work on the fire station.  Neither of
these facts affects our analysis.  Rakowitz testified that he sent invoices to
State Construction for work he performed for Eagle to show that he had not been
paid.  In addition, State Construction contracted directly with Rakowitz for
other work, such as repairing property damaged by another subcontractor.  Rakowitz
presented evidence that this work was separate from the work he performed for
Eagle and for which he sought compensation at trial.  

            In a similar
argument, Eagle contends that Rakowitz cannot recover from Eagle in quantum
meruit for the additional work he performed pursuant to the change orders
because it was State Construction and not Eagle that authorized the work and to
whom Rakowitz looked for payment.  But Rakowitz testified that Eagle authorized
him to perform the work and that he expected Eagle to pay him.  Eagle
identifies no basis for us to disregard this testimony.

            3.         Excuse

            According to
Eagle, the evidence also conclusively establishes that Rakowitz quit working
before Eagle stopped paying, and thus, Eagle’s failure to pay is excused by Rakowitz’s
breach or repudiation of the contract.  This assertion is not supported by the
record.  As to the work described in the purchase orders, and as previously
discussed, Rakowitz presented evidence that Eagle owed him $37,850.00.  He
further testified that Eagle received the change orders in March or April, and
despite Eagle’s failure to pay, Rakowitz continued working until June.

            In sum, we
cannot accept any of Eagle’s arguments as to liability without disregarding
evidence we are required to consider.  Because the evidence is legally and
factually sufficient to support the jury’s finding of liability, we overrule
Eagle’s first issue.

B.        Consolidation
and Severance 

            Eagle next challenges
the trial court’s order granting Rakowitz’s motion for rehearing of Eagle’s
motion to consolidate.  A trial court has broad discretion in consolidating and
severing cases, see Tex. R. Civ.
P. 41, 174, and we review such decisions for abuse of that discretion.  Guar.
Fed. Sav. Bank v. Horshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990)
(op. on reh’g).  But Rakowitz’s motion is not in the record.  

            The
appellant bears the burden to bring forward an appellate record sufficient to
enable us to determine whether the complaints of reversible error are
substantiated.  See Uranga v. Tex. Workforce Comm’n, 319 S.W.3d
787, 791 (Tex. App.—El Paso 2010, no pet.).  When preparing an appellate
record, the trial court clerk is required to include copies of certain
documents listed in Texas Rule of Appellate Procedure 34.5(a).  But a copy of a
motion for rehearing of another pretrial motion is not among the list of
documents required to be included, and instead must be requested.  See Tex. R. Civ. P. 34.5(a), (b).  Eagle,
however, did not ask the trial court clerk to include the motion for rehearing
in the appellate record.  As a result, we do not know the grounds on which
Rakowitz moved for rehearing; we know only that the motion was granted.  Thus,
the record before us does not demonstrate that the trial court abused its
discretion in granting Rakowitz’s motion for rehearing and setting aside the
consolidation order.  

            In its
arguments, Eagle treats the trial court’s order solely as a severance, and does
not explain why we should hold that the trial court erred in setting aside its
initial order consolidating the two cases—an act sometimes referred to as
“deconsolidating” the cases.[3] 
A trial court has “not only the authority but the responsibility to review any
pre-trial order upon proper motion.”  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241 (Tex. 1985).  That is precisely what the trial court did
here, and even without Rakowitz’s motion for rehearing, the record shows both
substantive and procedural reasons for the trial court’s action.  

            Most
importantly, consolidation would have defeated the very purpose it was intended
to serve—that of avoiding unnecessary costs or delay.  See Tex. R. Civ. P. 174.  Eagle moved for consolidation
four weeks before trial.  In effect, the order granting the motion added a new
party to a case that was scheduled to be tried before a jury twenty-six days
later.  As a result, consolidation would have necessitated a new trial setting
in a case that already had been set for trial four times.[4]  

            In a
procedural sense, it also is significant that the motion for consolidation was
granted at a hearing attended only by Eagle’s counsel.  When the trial court
asked if the motion was opposed, Eagle’s counsel responded, “They filed an
objection.  One party filed an objection.  The other didn’t.”  It is true that
Liberty Mutual filed objections in advance of the hearing and Rakowitz did not,
but any impression that Rakowitz consented to consolidation was necessarily corrected
when he moved for rehearing.  Although Rakowitz’s motion for rehearing is not in
the appellate record, Eagle’s response is.  According to Eagle, Rakowitz’s
counsel represented “in various pleadings” that (1) he had no notice of the
initial hearing on Eagle’s motion to consolidate, (2) his staff miscalendared
the date of the original hearing, and (3) a family problem prevented his
attendance.  Eagle does not contend that these are not valid reasons for
granting the motion for rehearing. 

            The record
does not show that the trial court acted arbitrarily or unreasonably in granting
rehearing and setting aside the consolidation order.  We therefore need not
consider Eagle’s arguments that it was harmed by the trial court’s alleged
error, but instead overrule Eagle’s second issue.[5]   

C.        Damages


            Lastly,
Eagle challenges the damages award, arguing that the jury charge included an
instruction erroneously defining the measure of damages in a breach-of-contract
claim.  Specifically, the trial court charged the jury that when determining
the amount of damages that would compensate Rakowitz for Eagle’s failure to
comply with the contracts, the jury should consider “[t]he sum contracted for
by the parties.”  On appeal, Eagle argues that this was the wrong measure of
damages.

            Before we
may address the merits of Eagle’s argument, we must determine if its complaint
was preserved.  To preserve error, a party must make the trial court aware of its
complaint, timely and plainly, and obtain a ruling.  In re B.L.D., 113
S.W.3d 340, 349 (Tex. 2003).  Where the party has failed to do so, the
complaint is waived.  Tex. R. App.
P. 33.1(a)(1); Tex. R. Civ. P.
274.  Here, Eagle stated in the trial court, “Eagle Fabricators objects to the
phrase the [‘]sum contracted for by the parties[’].  It is not an element of
damages in breach of contract.  We object that it is impermissible comment on
the weight of the evidence.”  

            On appeal,
Eagle no longer contends that the phrase “the sum contracted for by the
parties” is a comment on the weight of the evidence or that it is not an
element of damages in a breach-of-contract claim, but instead argues only that
this is the wrong measure of damages.  This complaint is different from the one
Eagle made in the trial court.  A defendant who fails to raise the issue of an
improper measure of damages waives error.  See Tribble & Stephens Co. v.
Consol. Servs., Inc., 744 S.W.2d 945, 949 (Tex. App.—San Antonio 1987, writ
denied).  Assuming the objection raised at trial put the trial court on notice
that Eagle thought the contract price can never be an appropriate measure of
damage, this is not the case.  See McFarland v. Sanders, 932 S.W.2d 640,
644 (Tex. App.—Tyler 1996, no writ) (addressing circumstances in which the contract
price is the correct measure of damages).  Any other objection as to the
measure of damages was waived.  See Tribble & Stephens Co., 744
S.W.2d at 949.

            Eagle argues
in the alternative that there is no support for the award under the charge as
given because the parties contracted for specific amounts to be paid to
Rakowitz if he completed the three projects, and the amount found by the jury
to be owed to Rakowitz differs from the amount that would have been due under
the completed purchase orders if there had been no changes.  But Rakowitz
testified that Eagle agreed he would submit the work orders and be paid weekly
as the work progressed, and that Eagle stopped making those payments. 
Moreover, the purchase orders called for Rakowitz to complete the work in
accordance with Eagle’s plans, which contained a notice to erectors that
charges for corrective work would not be accepted unless Eagle authorized the
work before the charges were incurred.  Rakowitz testified that he obtained
Eagle’s advance authorization for all work, thereby complying with this
provision.  The jury could reasonably conclude that the work orders were an
offer to perform the additional work, and Eagle’s authorization constituted its
acceptance and agreement to pay the charged amount. 

            We therefore
overrule Eagle’s third issue.

IV.  Conclusion

            We conclude
that the evidence is legally and factually sufficient to support the jury’s
findings, and Eagle has waived its remaining arguments.  We therefore affirm
the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

 

Panel consists of Chief
Justice Hedges and Justices Frost and Christopher.









[1] Capitalization
normalized.





[2] Although Eagle asserts in
its brief that there is no evidence it failed to pay Rakowitz amounts due under
the purchase orders for the work completed on any of the three projects, Eagle
nevertheless concedes that Rakowitz may have completed the percentage of the
work he claimed to have performed on the middle school.





[3] See, e.g., In
re Allied Chem. Corp., 227 S.W.3d 652, 654–55 (Tex. 2007) (addressing the
improper consolidation of cases even though the plaintiffs’ motion for
deconsolidation was granted); Mayes v. Goodyear Tire & Rubber Co.,
144 S.W.3d 50, 54 (Tex. App.—Houston [1st Dist.] 2004) (noting that after
summary judgment was granted for one defendant, the claim was severed, then
reconsolidated with the remaining claim before the claims were deconsolidated),
rev’d on other grounds, 236 S.W.3d 754 (Tex. 2007) (per curiam); Dal-Briar
Corp. v. Baskette, 833 S.W.2d 612, 614 (Tex. App.—El Paso 1992, orig.
proceeding) (conditionally granting writ of mandamus to deconsolidate cases), abrogated
on other grounds, In re Schmitz, 285 S.W.3d 451 (Tex. 2009).  





[4] The docket sheet shows
that when consolidation initially was ordered, trial was set for the week
beginning February 9, 2009.  It appears that the case was not reached, and on
February 11, 2009, the case was reset to the week of June 15, 2009, when it
finally was tried.





[5] Eagle complains that
“severance was harmful because it vaporized Eagle’s cross-claim against
Liberty,” but as Eagle pointed out in the trial court and Liberty Mutual
conceded in its motion to strike the claim, setting aside the consolidation did
not automatically result in Liberty Mutual’s removal from the case or eliminate
Eagle’s claim against it.  Liberty Mutual therefore moved separately to strike
the claim, and Eagle fails to address all of the grounds stated or incorporated
by reference in Liberty Mutual’s motion.  Thus, to the extent that Eagle does
not simply allege harm from the deconsolidation of the cases and instead could
be considered to have raised the distinct issue of whether the trial court
erred in granting Liberty Mutual’s motion to strike Eagle’s claim, this complaint
is waived.  See Conely v. Tex. Bd. of Criminal Justice, No.
03-08-00293-CV, 2010 WL 1632972, at *2 (Tex. App.—Austin Apr. 22, 2010, no
pet.) (mem. op.) (affirming dismissal of claims where appellant failed to
challenge on appeal every ground on which the motion to dismiss was based).