**EAGLE FABRICATORS, INC., Appellant,**

v.

**Raymond RAKOWITZ d/b/a Redline Welding & Steel Services, Appellee.**

**No. 14–09–01027–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 14, 2011.

---

Kenneth A. Zimmern, Houston, for appellant.

Andrew P. McCormick, Bellaire, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this contract case, a jury found that appellant Eagle Fabricators, Inc. owed Raymond Rakowitz more than $78,000.00 for his construction services. Eagle asks us to reverse the judgment on procedural and evidentiary grounds. Because Eagle has not shown that the trial court erred in charging the jury or in setting aside an order consolidating this case with another, and because the evidence is legally and factually sufficient to support the judgment, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The City of Houston hired State Construction, L.P. to act as the general contractor in building a fire station, a high school, and a middle school. To ensure that subcontractors were paid, State Construction posted a bond issued by Liberty Mutual Insurance Company. State Construction hired subcontractor Eagle Fabricators, Inc. to fabricate and erect the steel

used in the three projects, and Eagle hired Raymond Rakowitz d/b/a Redline Welding & Steel Services as a second-tier subcontractor to erect the steel. Rakowitz agreed to use the steel fabrications provided by Eagle and to perform the work in accordance with Eagle's drawings. The drawings contained Eagle's "Notice to Customer & Erector" that "back charges for down time, corrective work or replaced materials will not be accepted unless authorized by Eagle Fab before such costs are incurred." [1]

Over the course of construction, it was discovered that many of the steel parts Rakowitz was to erect were improperly fabricated, and he could not continue the work without performing additional work at an increased cost. Although Eagle disputes it, Rakowitz testified that he obtained advance oral authorization from Eagle for all additional work and sent Eagle work orders on a weekly basis. According to Rakowitz, Eagle first instructed him to send invoices for the additional work to another company that performed fabrication services as a subcontractor to Eagle. Rakowitz did not have a contract with the other subcontractor, and no payments were made in response to the invoices. Rakowitz testified that he also sent invoices to State Construction to show the general contractor that Eagle had not paid for all of the work he performed for Eagle.

Rakowitz last worked on the construction projects on or about June 7, 2007. On June 11, 2007, Rakowitz sent Eagle invoices for the outstanding charges and stated that he could not continue working unless the additional charges were paid, but Eagle made no further payments. A month later, Eagle sent State Construction a sworn proof of claim that Eagle owed $28,000.00 to Rakowitz's company for work

---

1. Capitalization normalized.

on the fire station alone. Of that sum, Eagle identified $23,485.00 as the amount due for "extras or adjustments" to the original agreed contract price. Less than a week after submitting the sworn proof of claim, Eagle wrote to State Construction asking that State Construction bar Rakowitz's company from the high school jobsite, and a few days later, Eagle notified Rakowitz by certified mail that he was fired from the high school and middle school projects.

The parties were unable to come to any agreement over the outstanding charges, and Rakowitz sued Eagle in Harris County Civil Court at Law No. 3. In addition, Rakowitz sued Liberty Mutual on the construction bond in Harris County Civil Court at Law No. 2, seeking payment of amounts owed for his work for Eagle.

Just over a month before this case was scheduled to be tried, Eagle moved to consolidate it with Rakowitz's case against Liberty Mutual. Over Liberty Mutual's objection, the trial court initially granted the request. A week later, and just eighteen days before the trial setting, Eagle filed a cross-claim against Liberty Mutual for payments that State Construction allegedly owed Eagle. Rakowitz moved for rehearing of the consolidation order, and Liberty Mutual moved to strike Eagle's cross-claim. The trial court granted both motions on the same day, in effect restoring the status quo ante.

Although the evidence at trial was conflicting, Rakowitz presented testimony and documentary evidence that he had not been paid in full for his work on any of the three projects. The evidence shows that Eagle agreed in the purchase order to pay Rakowitz $88,000.00 for work on the fire station. Rakowitz testified that he completed 95% of that work, which entitled him to a progress payment of $83,600.00. Of that amount, Eagle paid $60,000.00,

leaving an outstanding balance of $23,600.00, exclusive of the change orders. Regarding the high school, Rakowitz offered evidence that he was to be paid $43,000.00 for the work he performed pursuant to the purchase order, and because he had completed 75% of that work, he was entitled to a progress payment of $32,250.00. Eagle had paid $22,000.00 of this amount, leaving a balance of $10,250.00. Concerning the construction of the middle school, Eagle agreed to pay Rakowitz $20,000.00 for the work addressed in the purchase order, and Rakowitz testified that he completed 70% of the work and was entitled to a progress payment of $14,000.00. Eagle had paid him only $10,000.00, leaving an outstanding balance of $4,000.00. Thus, according to the evidence Rakowitz presented, Eagle owed him $37,850.00 for the portion of the work Rakowitz performed that was described in the purchase orders.

In addition, Rakowitz presented evidence that he performed additional work on the fire station as reflected in two sets of change orders. His charges on these orders were $16,720.00 and $16,210.00, neither of which had been paid. Rakowitz also presented evidence that he performed additional work on the high school reflected in a change order for which he was due $5,320.00. The total due on the change orders was $38,250.00.

The sum of the disputed amounts Rakowitz sought to recover for his work on these three projects was $76,100.00. In addition, he sought recovery of $2,250.80 Eagle owed for work he performed on a fourth project, referred to as the Fifth Ward Multiservice Center. In this appeal, Eagle does not dispute its liability on this claim. Overall, then, the sum of the damages Rakowitz sought was $78,350.80.

The jury found that (a) Rakowitz performed compensable work for Eagle; (b)

Eagle and Rakowitz each failed to comply with their agreements, but Rakowitz's failure was excused and Eagle's failure was not; and (c) Eagle was the first to breach the contract. Rakowitz was awarded $78,350.80 in damages, representing the full amount he sought at trial, together with attorneys' fees. Eagle's motion for new trial was overruled by operation of law, and this appeal ensued.

## II. ISSUES PRESENTED

In its first appellate issue, Eagle argues that it is entitled to a take-nothing judgment because (a) the evidence is legally and factually insufficient to support the finding that Eagle breached its contract with Rakowitz; (b) the evidence conclusively establishes that Eagle was excused from any breach; and (c) Rakowitz performed additional work for State Construction, not for Eagle, and therefore is not entitled to recover from Eagle in quantum meruit for that work. In its second issue, Eagle contends the trial court erred in setting aside the order consolidating Rakowitz's claims against Eagle with his claim against Liberty Mutual. Eagle argues in its third issue that the damage award must be reversed because it is based on charge error and because the evidence supporting the award is legally and factually insufficient.

## III. ANALYSIS

### A. Evidence of Liability

When reviewing the legal and factual sufficiency of evidence, we apply well-established standards of review. To determine whether the evidence is legally sufficient to support the judgment, we review the entire record, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

We assume that jurors decided questions of credibility or conflicting evidence in favor of the verdict if they reasonably could do so. *Id.* at 819, 820. We do not substitute our judgment for that of the trier-of-fact if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then it is legally sufficient to support the verdict. *Id.* When reviewing a jury finding for factual sufficiency, we consider and weigh all of the evidence in a neutral light and conclude that the finding is not supported by sufficient evidence only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Whether reviewing the legal or factual sufficiency of the evidence, appellate courts do not reweigh the credibility of witnesses. *City of Keller,* 168 S.W.3d at 820 (legal sufficiency); *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003) (factual sufficiency).

In its briefing, Eagle has presented some arguments applicable to all of Rakowitz's contractual claims, some that are associated only with his claims under the original agreements with Eagle—i.e., the purchase orders—and some that concern only those claims associated with the later arrangements for additional work—i.e., the change orders. To the extent that Eagle presents different arguments regarding each type of claim, we maintain that distinction in our discussion.

### 1. Purchase Orders

■ With regard to the work that was the subject of the purchase orders, Eagle contends there is no evidence that it failed to pay for the percentage of work Rakowitz actually completed. According to Eagle, Rakowitz's claim that he finished 95%

of the work on the fire station is "implausible" and his claim that he completed 75% of the work on the high school is "not credible." Nevertheless, this was Rakowitz's testimony, and we will not reweigh his credibility.[2] In support of its contention that no reasonable jury could have accepted this testimony, Eagle points only to evidence that State Construction eventually paid another subcontractor more money to complete the erection services on these two projects than Eagle would have been required to pay Rakowitz to finish the work under the terms of the purchase orders if there had been no changes or delays. It is undisputed, however, that there were changes and delays, and Eagle offers no explanation for its assumption that the costs of performance in these two very different scenarios should be the same. We therefore do not find this argument persuasive.

### 2. Change Orders

#### a. Absence of Prior Written Authorization

■ Eagle next contends that the evidence is legally and factually insufficient to support liability because Rakowitz was required to obtain Eagle's prior written authorization for the additional work described in the change orders, but failed to do so. In making this argument, Eagle simply ignores much of the contrary evidence admitted at trial. Specifically, Rakowitz testified that he obtained Eagle's authorization before performing any additional work. Although the authorization he received was oral, he was not required to obtain it in writing. That requirement is found in the contracts between State Con-

struction and Eagle, but not in the contracts between Eagle and Rakowitz.

Eagle asserts that Rakowitz was bound by the writing requirement found in Eagle's contracts with State Construction because Rakowitz benefited from those contracts' provisions. In support of this argument, Eagle cites cases addressing the doctrine of direct benefits estoppel. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 741 (Tex.2005) (explaining that under direct benefits estoppel, a second-tier subcontractor suing a general contractor is bound by an arbitration provision in the contract between the general contractor and the first-tier subcontractor only when he "seeks, through the claim, to derive a direct benefit from the contract" containing the provision); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 132–33 (Tex.2005) (under direct benefits estoppel, a nonsignatory to a contract containing an arbitration provision may be bound by the provision if the nonsignatory sought or obtained direct benefits from the contract during its performance). But Eagle does not cite, and we have not found, any Texas case applying this doctrine to any question other than the determination of whether someone is bound by an arbitration clause found in a contract to which he is not a signatory, but from which he seeks or has sought a direct benefit. No such circumstances are present here. The provision at issue does not concern arbitration; Rakowitz has not asserted a claim under Eagle's contracts with State Construction; and Eagle has identified no way in which Rakowitz directly benefitted from those contracts. This argument therefore presents no basis for reversal.

---

**2.** Although Eagle asserts in its brief that there is no evidence it failed to pay Rakowitz amounts due under the purchase orders for the work completed on any of the three pro- jects, Eagle nevertheless concedes that Rakowitz may have completed the percentage of the work he claimed to have performed on the middle school.

### b. Rakowitz's Invoices to State Construction

■ Eagle also points out that Rakowitz sent invoices to State Construction and was paid directly by State Construction for some work on the fire station. Neither of these facts affects our analysis. Rakowitz testified that he sent invoices to State Construction for work he performed for Eagle to show that he had not been paid. In addition, State Construction contracted directly with Rakowitz for other work, such as repairing property damaged by another subcontractor. Rakowitz presented evidence that this work was separate from the work he performed for Eagle and for which he sought compensation at trial.

■ In a similar argument, Eagle contends that Rakowitz cannot recover from Eagle in quantum meruit for the additional work he performed pursuant to the change orders because it was State Construction and not Eagle that authorized the work and to whom Rakowitz looked for payment. But Rakowitz testified that Eagle authorized him to perform the work and that he expected Eagle to pay him. Eagle identifies no basis for us to disregard this testimony.

### 3. Excuse

■ According to Eagle, the evidence also conclusively establishes that Rakowitz quit working before Eagle stopped paying, and thus, Eagle's failure to pay is excused by Rakowitz's breach or repudiation of the contract. This assertion is not supported by the record. As to the work described in the purchase orders, and as previously discussed, Rakowitz presented evidence that Eagle owed him $37,850.00. He further testified that Eagle received the change orders in March or April, and despite Eagle's failure to pay, Rakowitz continued working until June.

In sum, we cannot accept any of Eagle's arguments as to liability without disregarding evidence we are required to consider. Because the evidence is legally and factually sufficient to support the jury's finding of liability, we overrule Eagle's first issue.

## B. Consolidation and Severance

■ Eagle next challenges the trial court's order granting Rakowitz's motion for rehearing of Eagle's motion to consolidate. A trial court has broad discretion in consolidating and severing cases, *see* TEX.R. CIV. P. 41, 174, and we review such decisions for abuse of that discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990) (op. on reh'g). But Rakowitz's motion is not in the record.

■ The appellant bears the burden to bring forward an appellate record sufficient to enable us to determine whether the complaints of reversible error are substantiated. *See Uranga v. Tex. Workforce Comm'n*, 319 S.W.3d 787, 791 (Tex.App.-El Paso 2010, no pet.). When preparing an appellate record, the trial court clerk is required to include copies of certain documents listed in Texas Rule of Appellate Procedure 34.5(a). But a copy of a motion for rehearing of another pretrial motion is not among the list of documents required to be included, and instead must be requested. *See* TEX.R. APP. P. 34.5(a), (b). Eagle, however, did not ask the trial court clerk to include the motion for rehearing in the appellate record. As a result, we do not know the grounds on which Rakowitz moved for rehearing; we know only that the motion was granted. Thus, the record before us does not demonstrate that the trial court abused its discretion in granting Rakowitz's motion for rehearing and setting aside the consolidation order.

▪ In its arguments, Eagle treats the trial court's order solely as a severance, and does not explain why we should hold that the trial court erred in setting aside its initial order consolidating the two cases—an act sometimes referred to as "deconsolidating" the cases.[3] A trial court has "not only the authority but the responsibility to review any pre-trial order upon proper motion." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). That is precisely what the trial court did here, and even without Rakowitz's motion for rehearing, the record shows both substantive and procedural reasons for the trial court's action.

▪ Most importantly, consolidation would have defeated the very purpose it was intended to serve—that of avoiding unnecessary costs or delay. *See* Tex.R. Civ. P. 174. Eagle moved for consolidation four weeks before trial. In effect, the order granting the motion added a new party to a case that was scheduled to be tried before a jury twenty-six days later. As a result, consolidation would have necessitated a new trial setting in a case that already had been set for trial four times.[4]

In a procedural sense, it also is significant that the motion for consolidation was granted at a hearing attended only by Eagle's counsel. When the trial court asked if the motion was opposed, Eagle's counsel responded, "They filed an objection. One party filed an objection. The other didn't." It is true that Liberty Mutual filed objections in advance of the hearing and Rakowitz did not, but any impression that Rakowitz consented to consolidation was necessarily corrected when he moved for rehearing. Although Rakowitz's motion for rehearing is not in the appellate record, Eagle's response is. According to Eagle, Rakowitz's counsel represented "in various pleadings" that (1) he had no notice of the initial hearing on Eagle's motion to consolidate, (2) his staff miscalendared the date of the original hearing, and (3) a family problem prevented his attendance. Eagle does not contend that these are not valid reasons for granting the motion for rehearing.

The record does not show that the trial court acted arbitrarily or unreasonably in granting rehearing and setting aside the consolidation order. We therefore need not consider Eagle's arguments that it was harmed by the trial court's alleged error, but instead overrule Eagle's second issue.[5]

---

**3.** *See, e.g., In re Allied Chem. Corp.*, 227 S.W.3d 652, 654–55 (Tex.2007) (addressing the improper consolidation of cases even though the plaintiffs' motion for deconsolidation was granted); *Mayes v. Goodyear Tire & Rubber Co.*, 144 S.W.3d 50, 54 (Tex.App.-Houston [1st Dist.] 2004) (noting that after summary judgment was granted for one defendant, the claim was severed, then reconsolidated with the remaining claim before the claims were deconsolidated), *rev'd on other grounds*, 236 S.W.3d 754 (Tex.2007) (per curiam); *Dal–Briar Corp. v. Baskette*, 833 S.W.2d 612, 614 (Tex.App.-El Paso 1992, orig. proceeding) (conditionally granting writ of mandamus to deconsolidate cases), *abrogated on other grounds, In re Schmitz*, 285 S.W.3d 451 (Tex.2009).

**4.** The docket sheet shows that when consolidation initially was ordered, trial was set for the week beginning February 9, 2009. It appears that the case was not reached, and on February 11, 2009, the case was reset to the week of June 15, 2009, when it finally was tried.

**5.** Eagle complains that "severance was harmful because it vaporized Eagle's cross-claim against Liberty," but as Eagle pointed out in the trial court and Liberty Mutual conceded in its motion to strike the claim, setting aside the consolidation did not automatically result in Liberty Mutual's removal from the case or eliminate Eagle's claim against it. Liberty Mutual therefore moved separately to strike the claim, and Eagle fails to address all of the

## C. Damages

 Lastly, Eagle challenges the damages award, arguing that the jury charge included an instruction erroneously defining the measure of damages in a breach-of-contract claim. Specifically, the trial court charged the jury that when determining the amount of damages that would compensate Rakowitz for Eagle's failure to comply with the contracts, the jury should consider "[t]he sum contracted for by the parties." On appeal, Eagle argues that this was the wrong measure of damages.

 Before we may address the merits of Eagle's argument, we must determine if its complaint was preserved. To preserve error, a party must make the trial court aware of its complaint, timely and plainly, and obtain a ruling. *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003). Where the party has failed to do so, the complaint is waived. Tex.R.App. P. 33.1(a)(1); Tex.R. Civ. P. 274. Here, Eagle stated in the trial court, "Eagle Fabricators objects to the phrase the [']sum contracted for by the parties[']. It is not an element of damages in breach of contract. We object that it is impermissible comment on the weight of the evidence."

 On appeal, Eagle no longer contends that the phrase "the sum contracted for by the parties" is a comment on the weight of the evidence or that it is not an element of damages in a breach-of-contract claim, but instead argues only that this is the wrong measure of damages. This complaint is different from the one Eagle made in the trial court. A defendant who fails to raise the issue of an improper measure of damages waives error. *See Tribble & Stephens Co. v. Consol. Servs., Inc.*, 744 S.W.2d 945, 949 (Tex. App.-San Antonio 1987, writ denied). Assuming the objection raised at trial put the trial court on notice that Eagle thought the contract price can never be an appropriate measure of damage, this is not the case. *See McFarland v. Sanders*, 932 S.W.2d 640, 644 (Tex.App.-Tyler 1996, no writ) (addressing circumstances in which the contract price is the correct measure of damages). Any other objection as to the measure of damages was waived. *See Tribble & Stephens Co.*, 744 S.W.2d at 949.

 Eagle argues in the alternative that there is no support for the award under the charge as given because the parties contracted for specific amounts to be paid to Rakowitz if he completed the three projects, and the amount found by the jury to be owed to Rakowitz differs from the amount that would have been due under the completed purchase orders if there had been no changes. But Rakowitz testified that Eagle agreed he would submit the work orders and be paid weekly as the work progressed, and that Eagle stopped making those payments. Moreover, the purchase orders called for Rakowitz to complete the work in accordance with Eagle's plans, which contained a notice to erectors that charges for corrective work would not be accepted unless Eagle authorized the work before the charges were incurred. Rakowitz testified that he obtained Eagle's advance authorization for all work, thereby complying with this provision. The jury could reasonably con-

grounds stated or incorporated by reference in Liberty Mutual's motion. Thus, to the extent that Eagle does not simply allege harm from the deconsolidation of the cases and instead could be considered to have raised the distinct issue of whether the trial court erred in granting Liberty Mutual's motion to strike Eagle's claim, this complaint is waived. *See Conely v. Tex. Bd. of Criminal Justice*, No. 03–08–00293–CV, 2010 WL 1632972, at *2 (Tex. App.-Austin Apr. 22, 2010, no pet.) (mem. op.) (affirming dismissal of claims where appellant failed to challenge on appeal every ground on which the motion to dismiss was based).

clude that the work orders were an offer to perform the additional work, and Eagle's authorization constituted its acceptance and agreement to pay the charged amount.

We therefore overrule Eagle's third issue.

### IV. CONCLUSION

We conclude that the evidence is legally and factually sufficient to support the jury's findings, and Eagle has waived its remaining arguments. We therefore affirm the trial court's judgment.