# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00116-CV

**Steve Key; Pat Curry; PJC Properties, L.L.C.; and
PJC Central Texas Freight Lines, L.L.C., Appellants**

**v.**

**Daniel R. Richards, as Receiver for Centex Freight Lines, L.L.C. and
Prudence Adams, Appellees**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY,
NO. C-1-CV-12-000159, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Steve Key, Pat Curry, PJC Properties, L.L.C. (PJC Properties), and PJC Central Texas Freight Lines, L.L.C. (PJC Centex), appeal the trial court's final judgment awarding damages and equitable relief on appellees' fraudulent-transfer and veil-piercing claims. Appellants argue that the trial court improperly applied the veil-piercing doctrine to impose individual liability on Key and Curry, that the evidence was insufficient to support the jury's fraudulent-transfer finding, and that appellees' claims were barred by the applicable statute of limitations. We will affirm the judgment.

After unsuccessful attempts to collect on a judgment that she obtained against Centex Freight Lines, L.L.C. (Centex) in a lawsuit alleging sexual harassment and retaliatory discharge, Prudence Adams and court-appointed receiver for Centex, Daniel R. Richards, filed this lawsuit alleging appellants' fraudulent transfer of Centex's assets to its owners' alter-ego company,

PJC Properties,[1] for the unlawful purpose of evading payment of the judgment. The challenged transaction was a foreclosure and sale of Centex's assets to PJC Properties after default on a loan purportedly secured by all of Centex's assets. The jury found that the asset transfer was fraudulent under the Uniform Fraudulent Transfer Act (UFTA) because PJC Properties did not have an enforceable security interest in the assets and that, therefore, Centex did not receive "reasonably equivalent value" in exchange for the assets. *See* Tex. Bus. & Com. Code § 24.006(a). The jury also found that Key, Curry, and PJC Properties were "responsible" for the unfair conduct of Centex, PJC Properties, and PJC Centex and that holding only Centex responsible for liability on the Adams judgment would result in injustice. Accordingly, the trial court awarded Adams damages in the full amount of her prior judgment jointly and severally against Key, Curry, and PJC Properties as well as attorney's fees and awarded the receiver possession and title of all assets owned or held by Centex as of the date of the Adams judgment.

### Fraudulent-transfer finding

Appellants contend that there was legally and factually insufficient evidence to support the jury's finding in Question 1 that the transfer of Centex's assets to PJC Properties was fraudulent as to Adams. Specifically, they complain that the evidence was insufficient to support the necessary finding that PJC Properties did not have an enforceable security interest in Centex's assets. *See id.* Appellants argue that appellees' claim about the security interest was based merely

---

[1] Curry owns 99% of PJC Properties, and Key owns the remaining 1%. PJC Properties wholly owns PJC Centex. According to its company agreement and IRS records, Centex (no longer an active entity) was wholly owned by Walkabout Transportation, LLC, which, in turn, was wholly owned by Curry (although Key testified in his deposition that Walkabout was owned 41% by Key, 49% by PJC Properties, and 10% by an individual not party to this suit).

2

on suspicion rather than evidence, based on attempts at trial to characterize the "primary evidence" (in the form of a signed promissory note, dated before the Adams judgment, in which Centex gave PJC Properties a security interest in its assets) as a sham document that had been backdated.

After reviewing the record, we conclude that there was sufficient evidence to support the jury's finding. Evidence at trial included the following: responses to post-judgment discovery after the first trial in which Key stated that there was no property of Centex that had been pledged as security for a debt and no documents referring to any liabilities of Centex or assets securing any debts; two UCC financing statements noting a purported security interest in certain trucks and in all of Centex's property that were filed, respectively, just before the initial lawsuit and the day after the jury reached its verdict in the first lawsuit; Key's testimony in his May, 2011 deposition that the only documents of which he was aware or had ever seen identifying PJC Properties as a secured lender were the two financing statements;[2] the inability of Lynn Maxwell and Curry, the two individuals who maintain business records of PJC Properties, to produce a promissory note or security agreement or to identify their existence or location during their depositions; and inconsistency between the terms of the promissory note that appellants eventually produced (dated 2007) requiring annual payments and Key's deposition testimony indicating that the loan required monthly payments. The jury was free to believe evidence such as this, disbelieve trial testimony and documentary evidence to the contrary, and conclude that the purported security interest was a sham. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827-28 (Tex. 2005) (in legal-sufficiency

---

[2] The financing statements could not have created a security interest because they are not signed by the debtor as required by the UCC. *See* Tex. Bus. & Com. Code § 9.203(b)(3)(A).

3

review, we must view evidence in light most favorable to verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (in factual-sufficiency review, we may set aside verdict only if evidence that supports jury finding is so weak as to be clearly wrong and manifestly unjust). We overrule appellants' third issue.

### *Piercing the corporate veil*

Appellants also argue that the trial court improperly pierced the corporate veil to impose individual liability against Key and Curry. We begin our discussion of this issue by noting the longstanding common law in Texas recognizing that courts may disregard the corporate structure and hold a corporate agent responsible for corporate liabilities "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008) (noting that Texas law has long permitted corporate structure to be disregarded on showing of constructive fraud, citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271-72 (Tex. 1986), and that legislature's amendments to former Business Corporations Act began requiring actual fraud to disregard structure for corporation's contractual obligations); *see also Shook v. Walden*, 368 S.W.3d 604, 614 (Tex. App.—Austin 2012, pet. denied) (noting that "Texas courts . . . have uniformly held (or at least assumed) that an LLC's veil could be pierced under extra-statutory equitable principles, although the Texas Supreme Court has yet to definitively address that question"); *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that, despite LLC statute providing that members are not individually liable for obligations of LLC, "Texas courts

4

and other jurisdictions . . . have applied to LLCs the same state law principles for piercing the corporate veil that they have applied to corporations.").

Secondly, we note the well-established rule in Texas that—independently of the equitable doctrine of veil-piercing—an entity's agent is personally liable for his own fraudulent or tortious acts. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 470 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.). Thus, the corporate veil "is not required to be pierced" in an action seeking to hold a corporate agent individually liable for his tortious or fraudulent acts. *Sanchez*, 274 S.W.3d at 712 (drawing distinction between contract claims, for which plaintiff may pierce LLC's veil upon showing of actual fraud, and tort claims, for which LLC member is individually liable for own tortious acts); *see also Shook*, 368 S.W.3d at 621 (noting that case law and legislature have long recognized distinction "between the perceived relative equities of veil-piercing claimants who are asserting tort theories of recovery versus those suing in contract").

Here, the relevant jury questions and instructions (Questions 2 and 3) inquiring whether appellants were "responsible" for the conduct of PJC Properties and Centex defined "responsible" as, among other illustrations, "transferr[ing] the assets . . . to avoid a judgment or debt" or "us[ing] the entity as a means of evading an existing legal obligation."[3] We conclude that

---

[3] Questions 2 and 3, respectively, inquired whether each Curry and Key were "responsible for [Centex LLC, PJC Properties, or PJC Centex's] conduct" and provided a separate "yes" or "no" answer line with respect to each entity. The instructions provided the following definitions of being "responsible" for an entity's conduct:

5

the jury's affirmative finding in Question 1 that a fraudulent transfer occurred, combined with an affirmative finding to Questions 2 and 3 finding Key and Curry responsible for such tortious conduct, support imposing individual liability on Key and Curry. *See Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.—Dallas 2007, no pet.) (fraudulent transfer of assets is tort); *In re Texas Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas 2005, orig. proceeding) (same). While the instructions in Questions 2 and 3 tracked language in veil-piercing case law, *see*, *e.g.*, *SSP Partners*, 275 S.W.3d at 451, it was not necessary for the trial court to employ the equitable doctrine to impose individual liability on Key and Curry in light of the jury's findings and on this record; Key and Curry are individually liable for their own tortious conduct in participating in and directing the wrongdoing.[4]  *See Walker*, 232 S.W.3d at 918.

> [Defendant] used the entity as a sham to perpetrate a fraud, and holding only the entity responsible would result in injustice, or
>
> [Defendant] used the entity as a means of evading an existing legal obligation, and holding only the entity responsible would result in injustice, or
>
> [Defendant] used the entity as a means of circumventing a statute, and holding only the entity responsible would result in injustice, or
>
> [Defendant] used the entity to protect a crime or to justify a wrong, and holding only the entity responsible would result in injustice, or
>
> [Defendant] transferred the assets of Centex Freight Lines, LLC to PJC Central Texas Freight Lines, LLC to avoid a judgment or debt and holding only Centex Freight Lines, LLC, PJC Properties, LLC or PJC Central Texas Freight Lines, LLC responsible would result in injustice.

[4]  We acknowledge that the legislature has broadly insulated LLC members from liability for an LLC's obligations, *see* Tex. Bus. Orgs. Code § 101.114 ("Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court."); however, without clear direction from the Supreme Court holding that

In this same issue, appellants complain about the jury charge's "insufficient guidance" on the issue of veil-piercing in Questions 2 and 3, arguing that each question (a) erroneously listed all three of the entities involved in this lawsuit (Centex, PJC Properties, and PJC Centex) when asking whether Key and Curry were "responsible" for the entities' conduct and (b) improperly defined what "responsible for the conduct" means by taking a "kitchen sink" approach in listing several improper theories of veil-piercing. With respect to each challenged question's containing multiple entities in asking whether defendants were responsible for their respective conduct, appellants did not specifically object to the instructions on this basis and have, therefore, waived any alleged error. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 274.

With respect to the instructions' allegedly improper "kitchen sink" definition of "responsible conduct," we conclude that the trial court did not abuse its discretion, both because of our conclusion that application of the veil-piercing doctrine was not necessary to impose individual liability on appellants and because, in any case, the definitions were supported by applicable case law. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g) (jury charge is reviewed for abuse of discretion, which occurs only if trial court acts without reference to any guiding principles); *Connell Chevrolet Co., Inc. v. Leak*, 967 S.W.2d 888, 894 (Tex. App.—Austin 1998, no pet.) ("If the charge resolves the controlling issues raised by the pleadings and any evidence in a feasible manner that does not confuse the jury, no error occurs."). The court's instructions were derived from applicable case law and are accurate statements of the law. *See*

the legislature has thereby abrogated longstanding common law recognizing that corporate agents are liable for their own tortious conduct and may even be liable for an entity's liabilities based on the equitable principles of veil piercing, we refuse to hold that section 101.114 shields Key and Curry from their tortious fraudulent transfer under the circumstances in this case.

7

*SSP Partners*, 275 S.W.3d at 451 (citing *Castleberry* for first four examples court provided in instructions of circumstances under which veil-piercing may be justified); *Noorani Gas & Convenience, Inc. v. State*, No. 03-06-00463-CV, 2008 WL 1827605, *18-19 (Tex. App.—Austin Apr. 24, 2008, no pet.) (mem. op.) (supporting fifth example in instructions by noting that "[c]ourts have consistently pierced the corporate veil when an indebted corporation transfers assets to another corporation to avoid a judgment or debt"); *see also Klein v. Sporting Goods, Inc.*, 772 S.W.2d 173, 176 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (holding evidence legally and factually sufficient to pierce veil and support jury finding of constructive fraud where evidence showed that defendant formed new entity that was "merely a continuation" of previous entity and foreclosed on secured debt to avoid unsecured creditors).

Lastly in this same issue, appellants contend that the evidence was legally and factually insufficient to support imposing individual liability on them for the fraudulent transfer. *See Wilson*, 168 S.W.3d at 827 (outlining legal-sufficiency standard of review); *Cain*, 709 S.W.2d at 176 (outlining factual-sufficiency standard of review). Our review of the entire record leads us to conclude that the evidence is legally and factually sufficient to support the jury's findings and the court's judgment imposing individual liability on Key and Curry. Evidence demonstrating appellants' ownership and control of the various entities (e.g., Key was the president of Centex at the relevant times and oversaw its day-to-day operations, while Curry wholly owned Centex and 99% of PJC Properties and was responsible for its management, which allegedly included making a loan to Centex); the relationship between the timing of occurrences such as: the prior Adams lawsuit, the UCC filings, the purported foreclosure by PJC Properties, the formation of PJC Centex (which included the carry over of the same employees, offices, and business operations of Centex without

8

interruption), and the eventual production of documents purportedly creating a secured loan; Curry and Key's use of the same attorney to represent both creditor (PJC Properties) and debtor (Centex) in the purported foreclosure and UCC filings; and the admitted purpose of the purported foreclosure to prevent Adams from collecting on her judgment all support the jury's findings and trial court's conclusions, which are not contrary to the overwhelming weight of the evidence. Accordingly, we overrule appellants' first issue.

***Damages***

In their second issue, appellants contend that the judgment is "irreconcilably flawed" because it provides for a "double recovery" by awarding Adams damages in the amount of $157,280.93 against them jointly and severally while also granting the receiver equitable relief in the form of possession and title to all of Centex's assets as of the date of the Adams judgment.[5] *Cf.* Tex. Bus. & Com. Code § 24.008 (listing remedies under UFTA to include avoidance of fraudulent transfer, attachment of assets, injunction against further disposition of assets, appointment of receiver, and "any other relief the circumstances may require"). However, appellants have waived the complaint by not making it to the trial court. *See* Tex. R. App. P. 33.1; *Major Help Ctr., Inc. v. Ivy, Crews & Elliott, P.C.*, No. 03-99-00285-CV, 2000 WL 298282, at *5 (Tex. App.—Austin 2000, no pet.) (mem. op.) (defendant waives issue of double recovery if not raised before trial court); *see also Eagle Fabricators, Inc. v. Rakowitz*, 344 S.W.3d 414, 423 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (defendant who fails to raise issue of improper measure of damages waives error).

---

[5] We note that the judgment does not award *Adams* any assets or other property of Centex but awards such property only to the receiver.

9

In the same issue, appellants also contend that there was legally and factually insufficient evidence of the amount of damages awarded to Adams and that she did not request and obtain necessary jury findings to support the award. *See* Tex. Bus. & Com. Code § 24.009 (when fraudulent transfer is voidable by creditor under section 24.008, creditor may recover judgment for value of asset transferred or amount necessary to satisfy creditor's claim, whichever is less). However, appellants have failed to preserve this issue as well. *See Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991) (challenges to legal sufficiency of evidence must be preserved by: motion for instructed verdict, motion for judgment notwithstanding verdict, objection to submission of issue to jury, motion to disregard jury's answer to vital fact issue, or motion for new trial specifically raising complaint); Tex. R. Civ. P. 324(b)(2) (challenges to factual sufficiency of evidence must be raised in motion for new trial). Accordingly, we overrule appellants' second issue.

### *Statute of limitations*

In their last issue, appellants contend that appellees' UFTA claims were barred by a one-year statute of limitations instead of the four-year period that appellees claim applies. *See* Tex. Bus. & Com. Code § 24.010(a)(2), (3) (cause of action for fraudulent transfer is extinguished unless brought within four years if brought under section 24.006(a) or within one year if brought under section 24.006(b)). We agree with appellees, who brought their claim under section 24.006(a) as a "reasonably equivalent value" claim, not as an "insider" claim under section 24.006(b).[6] The mere

---

[6] The respective sections defining actionable fraudulent transfers provide:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred *if the debtor made the transfer or incurred the obligation without receiving a reasonably*

fact that Key and Curry may have been insiders does not transform appellees' claim from one alleging that the transfer or obligation at issue was made without the debtor (Centex) receiving equivalent value in exchange, *see id.* § 24.006(a), into one alleging that the transfer was made to an insider for an antecedent debt, *see id.* § 24.006(b).  The jury was asked, in Question 1, whether the transfer of Centex's assets to PJC Properties was fraudulent as to Adams, and the definition of a fraudulent transfer contained therein tracked the language of subsection (a).  Accordingly, appellees' claims were not barred by limitations, and we overrule appellants' fourth issue.

Having overruled all of appellants' issues, we affirm the judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland
  Concurring Opinion by Justice Pemberton

Affirmed

Filed:   January 13, 2016

---

*equivalent value in exchange* for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b)  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made *if the transfer was made to an insider for an antecedent debt*, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Tex. Bus. & Com. Code § 24.006 (emphases added).

11