

# NUMBER 13-23-00167-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

STEVE MOSES,                                                      Appellant,

v.

RUTH FRANKS AND
JACOB FRANKS,                                                      Appellees.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 1
## OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Silva, Peña, and Cron
### Memorandum Opinion by Justice Cron

Proceeding pro se, Steve Moses appeals from an order dismissing his suit against

Ruth Franks and Jacob Franks for theft. By a single issue, Steve claims that the trial court

exhibited judicial bias against him by dismissing his suit without regard to the merits of his claim. We affirm.

## I. BACKGROUND

Steve and his daughter-in-law Ruth disagreed over the appropriate end-of-life care for Steve's wife and Ruth's mother, Norma Moses. On or about August 26, 2021, Ruth and her husband Jacob picked Norma up from the home she was sharing with Steve and took her to a hospital. Steve called the police and accused the Franks of "kidnapping" his wife and taking some of her personal property with them, including Norma's clothes, purse, and medications. Norma had apparently executed a document appointing Ruth as her medical power of attorney, and the police determined that Steve's accusations were unfounded. Norma never returned to Steve's care and passed away approximately one month later.

In October 2021, Steve sent the Franks a demand letter claiming that, as Norma's late husband, he was entitled to possession of "any and all of [Norma's] personal and real property that she owned at the time of her death." He threatened legal action against the Franks if they did not immediately return any personal property in their possession that had belonged to Norma.

Thereafter, the parties filed dueling pro se suits in the local justice court. Steve filed first, alleging that the Franks committed conversion by continuing to possess Norma's personal effects despite his demand letter. In their suit, the Franks denied that they were in possession of any such items, but they sought possession of other items that they claimed were Norma's separate property when she died, including a vehicle and

2

some furnishings. They also alleged that Steve had harassed and slandered them and sought damages for mental anguish. At the conclusion of a consolidated bench trial, the justice court found that none of the parties had proven any of their claims and entered a global take nothing judgment. Steve appealed the justice court's decision to the local county court at law (trial court), but the Franks did not.

During an initial status hearing, the trial court determined that Steve's claim was more properly characterized as a probate matter, directed Steve to first seek relief through the probate process, and set the case for another status hearing the following month. In the interim, Steve retained legal counsel, who filed a motion to retain the case on the trial court's docket while counsel explored "the proper probate proceeding."

At the next status hearing, counsel appeared and expressed his belief that the matter would be resolved through the probate process but asked the trial court to retain the case for an additional thirty days. The trial court granted the motion, and, in a separate proceeding before the same trial court, Steve filed an application to determine heirship and an application for a dependent administration of Norma's estate.

Several months later, counsel filed a motion to withdraw from this case. He explained that Steve "ha[d] been approved as the dependent administrator" of Norma's estate, but "[i]rreconcilable differences concerning the pursuit of the property dispute ha[d] arisen between [himself] and [Steve]." Steve filed a letter with the trial court explaining that he only hired counsel to represent him in the probate matter and that he intended to prosecute his appeal from the justice court pro se. He concluded the letter by requesting that the trial court "not dismiss [his] appeal" from the justice court.

3

The trial court held another status hearing where it considered counsel's motion to withdraw and Steve's motion to retain the case. The following exchange occurred:

THE COURT: . . . [Counsel], you were retained by [Steve] to handle a probate situation[?]

[COUNSEL]: Correct.

THE COURT: And you did that—

[COUNSEL]: Yes, sir.

THE COURT: We had a probate, didn't we?

[COUNSEL]: Yeah, we did.

THE COURT: And it was a determination of heirship[?]

[COUNSEL]: We did.

THE COURT: And there w[ere] disinterested witnesses that testified, and we got through all that?

[COUNSEL]: That is correct.

THE COURT: And do you understand that?

[STEVE]: Yes, sir.

THE COURT: Then I don't understand why you keep harassing my clerks about the case that this all originated out of. You filed a lawsuit to get back something from your deceased wife that they supposedly had.

[STEVE]: Yes, sir.

THE COURT: I told you that that's a probate matter, not a civil matter. You then hired [counsel] to take care of this, and that's what he did. Why are we here still?

[STEVE]: Well, a year ago, sir, you said . . . I needed a letter of executors [sic].

4

| | |
|---|---|
| THE COURT: | I don't need you to tell me what I told you. I'm going through this as patiently as I possibly can. . . . I'm going to ask you this question again. |
| [STEVE]: | Yes, sir. |
| THE COURT: | You understand that we've handled this matter through a probate. Do you understand that? |
| [STEVE]: | Yes, sir. |
| THE COURT: | And now I'm asking you[,] is this case that originally came to my court, which I told you should be handled by a probate, do you understand and do you agree that it's no longer necessary and should not be on my docket? |
| [STEVE]: | Yes, sir. |
| THE COURT: | Okay. Then I'm going to dismiss it because it's your case. |
| [STEVE]: | Yes, sir. |

That same day the trial court signed an order dismissing the case at the "request of plaintiff Steve Moses." This appeal ensued.

## II.    ANALYSIS

By a single issue, Steve alleges that the trial court's decision to dismiss the case "was motivated by bias against [him]." He complains that he "was not allowed to speak or present his case." He claims that he was prepared to put on evidence showing that the Franks "stole everything out of his wife's bedroom," but instead, the trial court dismissed his case without any legal basis for doing so. Despite the above exchange, Steve denies that he agreed to the dismissal and accuses the trial court of "lying" in the dismissal order. As further support for his claim of judicial bias, Steve alleges in his brief that the judge

presiding over his case "had previously ruled against [Steve] in a similar case, and [the judge] . . . made several comments during th[at] hearing that showed [the judge's] bias against [him]." Steve's claim of judicial bias fails for several reasons.

Most glaringly, Steve agreed to the dismissal. To present an issue on appeal, the record must show that the complaining party preserved the alleged error by making a timely and specific complaint to the trial court. TEX. R. APP. P. 33.1(a). Although he initially filed a letter requesting that the case be retained on the trial court's docket, Steve later assented to the trial court's suggestion that the case should be removed from the docket because it was "no longer necessary" after the probate proceeding. In doing so, Steve effectively withdrew his request to retain the case on the docket.

Steve argues on appeal that he only agreed to the trial court's suggestion because he "was afraid" that the trial court would find him in contempt. Even if genuine, Steve's subjective belief is not substantiated by the record. At no time did the trial court ever expressly or implicitly threaten Steve with contempt or any other sanction if he did not agree to the dismissal. We hold pro se litigants to the same standards as licensed attorneys, including procedural rules that require error preservation. *See Smale v. Williams*, 590 S.W.3d 633, 639 (Tex. App.—Texarkana 2019, no pet.); *see also Roblin v. Briggs*, No. 13-09-00475-CV, 2010 WL 4264793, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 28, 2010, no pet.) (mem. op.). Under these circumstances, Steve cannot agree to a dismissal and then complain on appeal that the dismissal was improper. *See* TEX. R. APP. P. 33.1(a).

Next, preservation concerns aside, Steve has not shown that he was harmed by

6

the dismissal. At the heart of Steve's appeal is an assumption that he had an absolute right to have his case decided on the merits. But it is clear from the record that the trial court determined that Steve's case had been rendered moot by the intervening probate proceeding. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (explaining that when a controversy ceases to exist between the parties, the case becomes moot, and the parties lose standing to maintain their claims). "A trial court is prohibited from deciding a moot controversy." *Walters v. Livingston*, 519 S.W.3d 658, 665 (Tex. App.—Amarillo 2017, no pet.) (citing *Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App.—Dallas 2009, no pet.)). And once a case becomes moot, the only appropriate action is dismissal. *Id.* (citing *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.—Dallas 2010, no pet.). Therefore, if the case was in fact moot, then dismissal was inevitable, and Steve cannot show reversible error. *See* TEX. R. APP. P. 44.1(a)(1). Whether the trial court's implicit finding was well founded is unclear because the appellate record in this case does not contain any filings or rulings from the probate proceeding.

In a proceeding to declare heirship, a court may determine a decedent's heirs and their respective interests in the decedent's estate. TEX. EST. CODE ANN. § 202.001. Thus, in the judgment declaring Norma's heirship, it is entirely possible that the trial court found that Steve did not have any interest in the disputed property. *See id.* On the other hand, "[i]mmediately after receiving letters testamentary or of administration, the personal representative of an estate shall collect and take possession of the estate's personal property" and "shall deliver the property . . . to the person or persons legally entitled to the property." *Id.* § 351.102(a), (b). Also, "[a]n executor or administrator appointed in this

state may commence a suit for . . . recovery of personal property." *Id.* § 351.054(a)(1). So, it is also possible that Steve's suit against the Franks was consistent with his obligations and rights as the dependent administrator of Norma's estate. *See id.* §§ 351.054(a)(1), 351.102(a), (b). Whatever the correct answer may be, Steve failed to bring forward an appellate record that would enable us to review the soundness of the trial court's reasoning. *See Eagle Fabricators, Inc. v. Rakowitz*, 344 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The appellant bears the burden to bring forward an appellate record sufficient to enable us to determine whether the complaints of reversible error are substantiated." (citing *Uranga v. Tex. Workforce Comm'n*, 319 S.W.3d 787, 791 (Tex. App.—El Paso 2010, no pet.))).

Finally, even if Steve had brought forward a record demonstrating reversible error, that would not mean that the trial court was biased against Steve. A party will rarely prevail on a claim of judicial bias based solely on the merits of a judicial ruling. *See Liteky v. U.S.*, 510 U.S. 540, 555 (1994) (explaining that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *cf. Rodriguez v. State*, 491 S.W.3d 18, 33 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("Only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible."). If that were the standard, every incorrect ruling made by a trial court would be subject to a claim of judicial bias. Instead, such rulings are generally best brought as grounds for appeal, not as evidence of judicial bias. *See Liteky*, 510 U.S. at 555. In other words, by couching his complaint as one of judicial bias, Steve has assumed the difficult burden of demonstrating that the dismissal was

motivated by personal animus, rather than plain error. In any event, as explained above, it appears that the trial court could have dismissed Steve's suit on multiple grounds, thereby foreclosing the marginal possibility that the ruling could demonstrate bias.

Steve also points to the trial court's conduct during the final hearing as evidence of bias. While we agree that the trial court expressed frustration with Steve during the hearing, expressions of "impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Id.* at 555–56 (explaining that such expressions "are within the bounds of what imperfect men and women, even . . . judges, sometimes display"). Moreover, the trial court's line of questioning about the necessity of retaining the case was consistent with the trial court's inherent authority to manage its docket, and "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556; *see also Gonzalez v. Gonzalez*, No. 04-20-00226-CV, 2021 WL 6127931, at *5 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.) ("The trial court's actions leading up to and including the March 5 hearing were all within its inherent power to control its docket and courtroom; and neither those actions nor the court's rulings on the parties' motions are sufficient to justify recusal.").

Steve also claims that the trial court made hostile comments in some other unidentified "similar case," but like the probate proceeding, Steve has not brought forward a record of this other alleged proceeding. *See Rakowitz*, 344 S.W.3d at 421. Therefore, on the record before us, Steve's claim of judicial bias falls well short. Steve's lone issue is overruled.

###### III.    CONCLUSION

The trial court's order of dismissal is affirmed.

JENNY CRON
Justice

Delivered and filed on the
13th day of February, 2025.